# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

SHIRLEY J. COCHRAN, )
)
       Plaintiff, )
)
v. ) Case No. CIV-13-281-KEW
)
CAROLYN W. COLVIN, Acting )
Commissioner of Social )
Security Administration, )
)
       Defendant. )

## OPINION AND ORDER

Plaintiff Shirley J. Cochran (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on May 1, 1960 and was 51 years old at the time of the ALJ's decision. Claimant obtained her GED and some college. Claimant has worked in the past as a Clerk III with the Cherokee Nation. Claimant alleges an inability to work beginning April 27, 2010 due to limitations resulting from fibromyalgia, arthritis, and thyroid disease.

**Procedural History**

On April 28, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On September 13, 2011, an administrative hearing was held before Administrative Law Judge ("ALJ") Richard J. Kallsnick in Tulsa, Oklahoma. By decision dated October 14, 2011, the ALJ denied Claimant's request for benefits. The Appeals Council denied review of the ALJ's decision on April 24, 2013. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform her past work.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to perform a proper analysis at steps 4 and 5; (2) failing to engage in an appropriate credibility determination; and (3) failing to properly evaluate Claimant's obesity as a severe impairment.

### Step Four and Five Analysis

In his decision, the ALJ found Claimant suffered from the severe impairments of fibromyalgia, arthritis, carpal tunnel syndrome, degenerative changes of the left knee with anterior cruciate ligament (ACL) tear, and obesity. (Tr. 15). In assessing Claimant's RFC, the ALJ also determined Claimant could perform less than a full range of light work. In so doing, the ALJ found Claimant could lift/carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 6 hours in an 8 hour workday and sit for 6 hours in an 8 hour workday. Claimant could use her hands and feet for operating controls. Claimant was found to be afflicted with sympomatology from a variety of sources, mild to moderate chronic pain, which was of sufficient severity as to be noticeable to her at all times; but that nonetheless, she would be able to remain attentive and responsive in a work setting and could carry out normal work assignments satisfactorily. The ALJ noted Claimant took medication for relief of her symptomatology, but that the medications did not preclude her from functioning at the sedentary level as restricted, and that she would remain reasonably alert to perform required functions presented by her work setting. (Tr. 16-17).

After consultation with a vocational expert, the ALJ determined Claimant retained the RFC to perform her past relevant work as a Clerk III. (Tr. 21). The ALJ also found Claimant could perform the

representative jobs of appointment clerk, registration clerk, office helper, cashier, and sorting worker all of which the expert testified existed in sufficient numbers nationally and regionally. (Tr. 22). The ALJ, therefore, concluded Claimant was not disabled. (Tr. 22-23).

Claimant asserts that the ALJ failed to consider her limitations in handling due to her fibromyalgia, hand arthritis, and carpal tunnel syndrome. Claimant specifically contends the ALJ did not properly assess the requirements of her past relevant work with regard to manipulative requirements in light of Claimant's restrictions in that functional area.

Claimant refers to the report of her rheumatologist, Dr. Michael Andrew Malloy dated December 28, 2009 to support her contention of functional limitations in handling. Dr. Malloy found upon examination, however, that Claimant had only "mild RA changes" in her right and left hands. (Tr. 197). Moreover, the medical record does not indicate any restriction in Claimant's grip. (Tr. 200, 202). The record does indicate Claimant had swelling and tenderness in the hands. Id. The remainder of Claimant's references in his briefing pertain to subjective complaints made during her testimony at the administrative hearing - complaints discounted by the ALJ in his credibility analysis.

Dr. Luther Woodcock completed a Physical Residual Functional Capacity Assessment on Claimant dated June 22, 2010. He noted Claimant was able to prepare complex and simple meals, does laundry, sweeps, does dishes, dusts, and pulls weeds in the garden. She could also go out alone and drive. He found no manipulative limitations on Claimant, noting she only had mild RA changes in her hands. (Tr. 281-84).

The ALJ rightly noted that the medical record is devoid of any indication that Claimant received treatment for carpal tunnel syndrome or that surgery was recommended for the condition. (Tr. 20). The mere diagnosis of a condition is not the focus of the ALJ's analysis but rather whether the condition represents an impairment which results in functional limitations. *See e.g.* Coleman v. Chater, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), Madrid v. Astrue, 243 Fed.Appx. 387, 392 (10th Cir. 2007)(the diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); Scull v. Apfel, 221 F.3d 1352 (10th Cir.

7

2000)(unpublished), 2000 WL 1028250, 1 (disability determinations turn on the functional consequences, not the causes of a claimant's condition).

Claimant suggests that the ALJ failed to perform the necessary analysis of the functional demands of her past relevant work before concluding she could return to her work as a Clerk III. In analyzing Claimant's ability to engage in her past work, the ALJ must assess three phases. In the first phase, the ALJ must first determine the claimant's RFC. Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ assessed Claimant's RFC at this phase fulfilling his obligation. Claimant's main objection is that the ALJ did not include limitations on handling in the RFC. The medical record does not support these manipulative limitations as suggested by Claimant.

In the second phase, the ALJ must determine the demands of the claimant's past relevant work. Id. In making this determination, the ALJ may rely upon the testimony of the vocational expert. Doyal v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003). The ALJ in this case inquired of the vocational expert as to the demands of Claimant's past relevant work, asking if the vocational expert "studied the record regarding claimant's work history." (Tr. 49). The expert testified Claimant's Clerk III work for the Cherokee

Nation was not specifically addressed by the *Dictionary of Occupational Titles* ("DOT") but that he likened it to an intake worker which he described as sedentary work, SVP 4, semi-skilled. Id. The ALJ posed hypothetical questions which mirrored the assigned RFC and the vocational expert testified that Claimant could perform this work. (Tr. 49-51). In this regard, the ALJ fulfilled his duty in the second phase. Again, Claimant's main objection to the analysis at phase two is that the ALJ did not include manipulative limitations in the hypothetical questions and the vocational expert did not consider such impairments. This argument has no merit since the medical record does not support the limitations on handling urged by Claimant.

The third and final phase requires an analysis as to whether the claimant has the ability to meet the job demands found in phase two despite the limitations found in phase one. Winfrey, 92 F.3d at 1023. The ALJ fulfilled his obligation in the decision. (Tr. 21, 49). Claimant alters the ALJ's findings and the vocational expert's actual testimony in stating the SVP level of the job found by the vocational expert should have actually been 6 rather than the 4 level to which he testified. This assertion is based upon Claimant's own massaging of the evidence rather than the actual state of the record as it exists before this Court. This Court

finds no error in the ALJ's analysis at step four.

Similarly, Claimant's assertion of error in the ALJ's findings at step five is based upon the premise that he should have found manipulative limitations. As stated, the record simply does not support such a finding or such functional limitations.

**Credibility Determination**

Claimant contends the ALJ failed to properly assess her credibility in several aspects. The ALJ recited the medical record with precision and detail in his decision as well as Claimant's testimony of restriction. (Tr. 18-21). The ALJ methodically sets forth that the record does not support the level of functional limitation asserted by Claimant in her testimony. (Tr. 20-21). In evaluating Claimant's credibility, the ALJ unnecessarily employed the ill-conceived and legally incorrect statement that

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Tr. 18).

Despite this meaningless statement, the ALJ recited the record and testimony in sufficient detail to support his credibility

findings. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's

credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ's evaluation of Claimant's credibility fulfills his obligation under the applicable law.

### Consideration of Obesity

Claimant contends the ALJ failed to adequately consider her obesity in his RFC evaluation. In his decision, the ALJ stated that he considered the requirements of Soc. Sec. R. 02-1p pertaining to the evaluation of obesity and its combined and cumulative effects upon a claimant's impairments. (Tr. 16). He also analyzed the applicability of Listing 1.02 concerning joint dysfunction but concluded that Claimant did not meet a listing. Id.

Claimant was diagnosed as morbidly obese. (Tr. 220). An ALJ is required to consider "any additional and cumulative effects" obesity may have upon other conditions from which a claimant suffers, recognizing that obesity combined with other impairments may increase the severity of the condition. Soc. Sec. R. 02-1p; 20 C.F.R. Pt. 405, Subpt. P, App. 1 § 1.00(Q)(combined effect with

12

musculoskeletal impairments).

At step three, "a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing." Soc. Sec. R. 02-1p. "[O]besity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments." Id. "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Each case is evaluated on information in the case record. Id. However, speculation upon the effect of obesity is discouraged.[2] See, Fagan v. Astrue, 2007 WL 1895596, 2 (10th Cir.).

The ALJ stated in his decision that he considered the combined effects of obesity upon other impairments, considered whether Claimant met a listing with consideration of her obesity, and emphasized the requirements of Soc. Sec. R. 02-1p as required by the regulations. This Court is required to take the ALJ at his word that he considered the condition, having found it to be a severe impairment, without speculating as to its effects. Indeed,

---

[2] "[W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments." Soc. Sec. R. 02-01p.

the medical record does not indicate and Claimant has not directed this Court to the presence of any functional limitations which would stem from Claimant's obesity. Again, the diagnosis of the condition does not automatically translate into functional limitations. The ALJ did not err in his consideration of Claimant's obesity.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 30th day of September, 2014.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE